■ In the Matter of J. BLOOM, INC., Petitioner, v. STATE BINGO CONTROL COMMISSION OF THE STATE OF NEW YORK, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR, to review the determination of the respondent Commissioner of Licenses of the City of New York, made May 24, 1963, and the determination of the respondent, the State Bingo Control Commission, made August 14, 1963, after hearings, which denied petitioner's application for a Commercial Lessor's Bingo License. By order of the Supreme Court, Kings County, made October 24, 1963 pursuant to statute (CPLR 7804, subd. [g]), this proceeding has been transferred to this court for disposition. Determinations confirmed, without costs. No opinion. Ughetta, Acting P. J., Hill, Rabin and Hopkins, JJ., concur; Kleinfeld, J., dissents and votes to remit the proceeding to respondents for the purpose of holding a further hearing and the making of a determination *de novo*, with the following memorandum: Respondents have denied petitioner's application for a license upon a finding that the testimony of petitioner's president was false and incredible. Such finding appears to be based upon the record facts that petitioner entered into an unconditional contract to purchase a leasehold, investing $40,000 cash — a sum which represented the entire net worth of petitioner's president — without examining the seller's books, without checking on a report that a reduction in rental income was likely, and while it was known to petitioner's president that it might be difficult to obtain a license. The hearing officer concluded that these facts " on their very face arouse suspicion as to whether there has been a complete disclosure of the real parties interested ". No doubt, there are cautious investors who would not have entered into the transaction on the same terms. On the other hand, based on figures verified by the petitioner's president's brother-in-law who was managing the premises, the proposed transaction indicated the likelihood of a net return of $53,000 per annum, or $27,000 per annum if the gross rental income were reduced 30%. It cannot be denied that there are many investors who would take greater risks for smaller returns, even considering the risk of loss of the entire investment due to failure to obtain a license. In my opinion, the record is devoid of evidence to warrant the "suspicion", expressed in the conclusion of the hearing officer, that undisclosed persons were interested in the transaction. The very fact that the contract was unconditional is evidence that the transaction was bona fide, and there is no evidence to the contrary. Respondents were without authority to deny the license application, if they acted upon

mere suspicion. (*Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256.) Petitioner's president testified that his accountant had seen the seller's books. Subsequently, he stated that this was a " lie ". Respondents contend that this " lie " was " in and of itself sufficient reason to deny the application." The hearing officer found that, in view of this concededly false testimony, petitioner's president " cannot be held to be a person of good moral character." This character appraisal is unsupported in the record. Petitioner's president explained that he had originally testified " in haste." His accountant had examined the figures on a " set-up " sheet which the witness had assumed was a book. He was " under tension " and " couldn't see straight; " he " was dizzy " when he previously testified. The record of petitioner's president is without blemish; and his character references evince an excellent reputation in his community. The respondent Commissioner of Licenses, in opposing the application, deposed that when he denied the license he relied partly on unrevealed " pertinent information known to [him]." This is a clear violation of petitioner's rights. Petitioner was entitled: (a) to be apprised of every fact upon which the determination was based; and (b) to be afforded an opportunity to rebut such facts (*Matter of Heaney* v. *McGoldrick*, 286 N. Y. 38). There are additional pertinent facts which should be developed at a rehearing. Although it appears that the subject premises were not licensed since June 1, 1962 when the current law became effective, they have apparently been utilized for bingo games, with respondent's permission, without cessation. Petitioner's predecessor operated in this manner for eight or nine months. Petitioner's contract was made in February, 1963. If petitioner then contemplated that it might be permitted to operate for a similar length of time, the risk of the unconditional contract might very well have been considered to be of little consequence. At a net return of $53,000 per annum, petitioner would not be risking the $40,000 at all, if it could operate for eight or nine months. It appears that petitioner has been operating the premises, pending the license application. At a rehearing, petitioner should be advised of the unrevealed pertinent information upon which the respondent Commissioner relied; and it should be afforded an opportunity to offer evidence in rebuttal.